**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Melvin L. Dillon and Robert J. Dillon, | Case No.:  2:20-cv-01436-JAD-VCF |
| Plaintiffs | |
| v. | **Order Screening Complaint and Granting IFP Applications** |
| Core Civic, Correction Corp of America (NSDC), et al., | [ECF Nos. 1-1, 5, 6] |
| Defendants | |

Federal pretrial detainees Melvin L. Dillon and Robert J. Dillon bring this pro se civil-rights action, claiming that the Nevada Southern Detention Center and its officials violated their constitutional rights by not taking reasonable steps to prevent them from being infected with SARS-CoV-2, the virus behind the COVID-19 pandemic.[1]  They also claim that their constitutional rights to equal protection and due process have been violated because their facility has not implemented the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  I grant the Dillons' applications to proceed in forma pauperis[2] and screen their complaint, as required by the Prison Litigation Reform Act (PLRA).  I hold that their suit may proceed on a single, injunctive-relief claim against defendants Brian Koehn, Michael Carvajal, and "Mr. Jefferson" to remedy alleged deliberate indifference to unsafe conditions.  Because the Dillons' other claims are unavailable to them as federal pretrial detainees seeking redress in a civil action, I dismiss them with prejudice.

---

[1] ECF No. 1-1 (complaint).

[2] ECF Nos. 5, 6 (applications to proceed in forma pauperis)

**Background**[3]

The Dillons are detainees at the Nevada Southern Detention Center (NSDC), which is a prison, transfer point, and detention facility operated by Core Civic, a private company that has a contract with the Department of Justice to house inmates for the Bureau of Prisons (BOP).[4]  But unlike the BOP-run counterparts, the Dillons allege, NSDC has failed to protect prisoners during the COVID-19 pandemic: it continues to permit the transfer of prisoners between facilities, increasing the risk of infection; it has failed to implement channels to process compassionate-release requests; and has "blocked" multiple individuals, including the Dillons, from applying for release to home confinement.[5]  And conditions at NSDC have, to put it in the Dillons' words, become "deplorable."[6]  Not only have prisoners been denied soap and face masks, but COVID-19 tests have not been uniformly given and few staff members wear proper, personal-protective equipment.[7]  They believe that this conduct violates both the Fourteenth and Eighth Amendments.

Plaintiffs thus sue "Correction Corp of America, Core Civic (NSDC)," NSDC Warden Brian Koehn, Director for the Bureau of Prisons Michael Carvajal, and U.S. Marshal Mr. Jefferson,[8] seeking monetary damages and injunctive relief in the form of the appointment of a liaison to be assigned to immediately have all inmates and staff tested for COVID-19 and to have

---

[3] These facts are taken from the complaint's allegations.  They are merely a summary of those allegations and are not intended as findings of fact.

[4] ECF No. 1-1 at 1, 3, 14.

[5] *Id.* at 4–5.

[6] *Id.* at 5.

[7] *Id.* at 6–7.

[8] *Id.* at 2–3.

inmates screened for transfer to home confinement, a halfway house, or pretrial release under the CARES Act.[9]

**Discussion**

The Dillons are not represented by counsel and they both signed the complaint in compliance with Rule 11(a) of the Federal Rules of Civil Procedure. I will allow them to pursue their claims jointly in this single action for now, but I may later consider severing their claims into two separate actions if circumstances or events indicate that severance is appropriate. I remind plaintiffs that they are both required to sign every pleading they file in this case.

**I.   Applications to proceed in forma pauperis**

Both plaintiffs move to proceed in forma pauperis.[10] Based on the financial information they have provided, I find that they are unable to prepay the full filing fees in this matter and grant both applications. This means only that the plaintiffs need not pay an initial installment fee, prepay fees or costs, or provide security for fees or costs, but they are each still required to pay the full $350 filing fee under 28 U.S.C. § 1915. That full filing fee will remain due even if this case is dismissed or otherwise unsuccessful. In order to ensure that each plaintiff pays his full filing fee, their institution will be directed to take money from their accounts monthly until their fees are fully paid.

**II.   The Dillons' claims**

Plaintiffs assert that this is both an action filed under 42 U.S.C. § 1983 and a "Bivens Action."[11] In addition to damages, the Dillons also seek injunctive relief.[12] A person may ask

---

[9] *Id.* at 9.

[10] ECF Nos. 5, 6.

[11] ECF No. 1-1 at 1, 3.

[12] *Id.* at 9.

3

the court to exercise its traditional powers of equity in constitutional suits seeking injunctive relief against federal officers in their official capacities.  But a *Bivens* action and a § 1983 claim are two different vehicles for asserting civil-rights claims, and the right to bring either generally depends on whether the plaintiff is held in a state or federal facility.  Section 1983 provides a right to challenge only actions performed under color of state law.  A *Bivens* action is essentially the federal version of a § 1983 claim, though it has far greater limits than its state counterpart. Here, it is apparent that plaintiffs are federal detainees, and they do not allege any facts that could indicate that any defendant was acting under color of state law.  So I liberally construe their claims as a *Bivens* action and not as a § 1983 action.

### A.    Screening standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from governmental entities or their or officers and employees.[13]  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.[14]

Section 1915(e)'s failure-to-state-a-claim standard "is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim"[15] and requires a properly pled complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[16]  While Federal Rule 8 does not require detailed factual allegations, it demands more

---

[13] *See* 28 U.S.C. § 1915A(a).

[14] *See id.* at § 1915A(b)(1), (2).

[15] *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing generally *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)).

[16] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[17] "Factual allegations must be enough to rise above the speculative level."[18] To survive a motion to dismiss, a complaint must "contain enough facts to state a claim to relief that is plausible on its face."[19]

Although allegations of a pro se complainant are held to less stringent standards than pleadings drafted by lawyers[20], all or part of a complaint filed by a prisoner may be dismissed sua sponte if the prisoner's claims lack an arguable basis either in law or in fact or are "frivolous." Unlike Federal Rule 12(b)(6), § 1915(e) accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."[21] The court need not accept all well-pled allegations as true, but must instead assess whether plaintiff's allegations are "clearly baseless," "fanciful," "fantastic," or "delusional."[22] Unless it is absolutely clear that no amendment can cure the defect, a pro se litigant proceeding in forma pauperis is entitled to an opportunity to amend the complaint before dismissal.[23]

---

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Twombly*, 550 U.S. at 555.

[19] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[20] *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

[21] *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[22] *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (quoting *Nietzke*, 490 U.S. at 325–28) (internal quotation marks omitted).

[23] *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**B.      Fourteenth Amendment claims**

Plaintiffs' equal-protection and due-process allegations center on whether the NSDC has properly implemented the directives of the CARES Act with respect to compassionate release and good-time credit.  While the Dillons have asserted that these claims arise under the Fourteenth Amendment, they are currently detained at NSDC because of a contract that Core Civic has with the United States Department of Justice.  It is apparent that any government action at issue here is federal action and their claim thus falls under the Fifth Amendment.[24] Regardless, courts take an approach to Fifth Amendment equal protection claims that is "precisely the same as to equal protection claims under the Fourteenth Amendment."[25]

### 1.      Equal-protection claims

To state a colorable equal-protection claim, a plaintiff must allege facts that would be sufficient to show that the defendant intentionally treated him differently from how that defendant treated similarly situated persons.[26]  Where a plaintiff does not allege that he is a member of a protected class or was denied a fundamental right, equal-protection requirements do not apply when the state actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments."[27]

Although the Dillons assert that there are some people at NSDC who are eligible for home confinement under the CARES Act and that those people are therefore similarly situated to people in the BOP who are being reviewed for home confinement as a result of the CARES, the Dillons do not allege facts sufficient to show that *they* are among those people who are eligible

[24] *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005).

[25] *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

[26] *Engquist v. Oregon Dep't of Agr.,* 553 U.S. 591, 602 (2008).

[27] *Id.* at 603.

for home confinement.  In fact, the Dillons are pretrial detainees who have not been convicted and sentenced and are thus ineligible for home confinement under 18 U.S.C. § 3624(c)(2).  The Dillons are also not similarly situated to convicted prisoners who earn good-time credits.  They currently have no sentences that can be reduced through credits and, as pre-trial detainees, they are not entitled to earn good-time credits by participating in programs.[28]  In addition, there is no non-discretionary right to rehabilitation programs for both pre-trial detainees and convicted prisoners.   Because the Dillons do not and cannot state a colorable equal-protection claim, and I dismiss it with prejudice.

### 2.   *Procedural due-process claims*

To state a colorable procedural due-process claim, a plaintiff must allege facts sufficient to show that he was deprived of a liberty interest.[29]  The Dillons, who are pre-trial detainees not serving a sentence, have no right under § 3624(c)(2) and the CARES Act to be considered for or released to home confinement.  In addition, a prisoner has no liberty interest in good-time credits unless the government has created such an interest by granting non-discretionary entitlement to such credits.[30]  The Dillons are not entitled to earn credits that would reduce their sentences.[31]  They also have no liberty interests in rehabilitation and education programs.[32]  Because they have not alleged facts sufficient to demonstrate that they are being deprived of a liberty interest,

---

[28] 28 C.F.R. § 523.17.

[29] *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

[30] *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex,* 442 U.S. 1, 8–11 (1979).

[31] *Schleining v. Thomas*, 642 F.3d 1242, 1246 n.3 (9th Cir. 2011); *cf. Stine v. Fox*, 731 Fed. App'x 767, 769–70 (10th Cir. 2018) (holding that prisoner had no liberty interest in discretionary future award of good-time credits).

[32] *Moody v. Daggett*, 429 U.S. 78, 88 (1976).

they do not and cannot state a colorable procedural-due-process claim. I therefore dismiss the procedural-due-process claim with prejudice, as amendment would be futile.

### B.  Eighth Amendment claims

The Dillons also seek injunctive relief and monetary damages for Eighth Amendment, deliberate-indifference claims, alleging that NSDC has failed to implement the safety precautions prescribed by the CARES Act.

#### 1.  *Correction Corp of America, Core Civic (NSDC)*

The Dillons appear to sue NSDC itself, alleging that it is "employed as a detention center for BOP."[33] NSDC is a building and is not subject to suit or liability, so because it appears that the Dillons sue "Correction Corp of America, Core Civic (NSDC)" in an attempt to sue the building itself, I dismiss all claims against Correction Corp of America, Core Civic (NSDC).

#### 2.  *Bivens claims*

Injunctive relief may not be obtained through *Bivens* actions, which are limited to claims for monetary damages against persons in their individual capacities.[34] I also note that a *Bivens* action is not "a proper vehicle for altering an entity's policy."[35] Thus, plaintiffs may not use a *Bivens* action to require prison officials to take any official action, including testing.

---

[33] ECF No. 1-1 at 2.

[34] *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) (holding that a *Bivens* action is inappropriate for claims seeking equitable relief against the federal government and explaining that *Bivens* suits are individual-capacity suits and thus cannot enjoin official government action); *Valdez v. United States*, 651 Fed. App'x 626, 627 (9th Cir. 2016) (holding that plaintiff could not obtain release from prison in *Bivens* action but instead had to seek such relief from a writ of habeas corpus).

[35] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).

I also find that plaintiffs may not pursue their *Bivens* damages claims in this action.  In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,[36] the United States Supreme Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures.  The Court later expanded *Bivens* damages claims in specific gender-discrimination and inadequate-medical-treatment scenarios involving defendants who were federal employees.[37]  But in *Ziglar v. Abbasi*, the Court significantly limited the availability of *Bivens* actions, cautioning lower courts not to expand *Bivens* remedies outside those specific three scenarios without special circumstances.[38]

When a *Bivens* action is brought in a context different from the three recognized situations, as is the situation here, the availability of alternative remedies will generally preclude the *Bivens* claim.[39]  The alternative remedies and a potential *Bivens* remedy "need not be perfectly congruent," nor do they be as generous or broad.[40]  *Bivens* does not extend to new

---

[36] *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).

[37] *See Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (permitting a damages remedy for gender discrimination under the Fifth Amendment's Due Process Clause); *Carlson v. Green*, 446 U.S. 14, 19 (1980) (allowing a damages remedy for an Eighth Amendment violation for failure to provide adequate medical treatment); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A *Bivens* claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

[38] *Ziglar*, 137 S. Ct. at 1854–55, 1857–61 (explaining that a context is new if the case differs in any meaningful way from the three previous *Bivens* cases); *see also Hernandez*, 140 S. Ct. at 743 ("A *Bivens* claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); *Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (recognizing that defendant's status as private employee is a new context).

[39] *Ziglar*, 137 S. Ct. at 1858, 1864–65; *Vega v. United States*, 881 F.3d 1146, 1153–55 (9th Cir. 2018) (declining to extend *Bivens* to Fifth Amendment due-process claim).

[40] *Minneci*, 565 U.S. at 129; *see also Vega*, 881 F.3d at 1155  (recognizing that the alternative remedial structure and the potential *Bivens* remedy need not be identical, and "any alternative,

situations if there is an alternative remedial structure like tort law, injunction actions, or remedial mechanisms established by the BOP for review of a federal prisoner's issues concerning confinement under 28 C.F.R. 542.10.[41]  So, a *Bivens* claim may not be brought against employees of a privately-operated federal prison when the allegedly wrongful conduct is of a kind that typically falls within the scope of traditional state tort law.[42]  And where tort or injunction actions provide an alternative remedy, courts have repeatedly refused to extend *Bivens* to conditions-of-confinement claims.[43]  Because the Dillons have alternative remedies available,

---

existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from a new and freestanding remedy in damages").

[41] *See Minneci,* 565 U.S. at 131 (holding that *Bivens* claim may not be brought against employees working at a privately operated federal prison where the allegedly wrongful conduct is of a kind that typically falls within the scope of traditional state tort law); *Malesko*, 534 U.S. at 74 (declining to apply *Bivens* where inmate in privately operated prison had full access to the remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program as set forth in 28 C.F.R. 542.10); *Vega*, 881 F.3d at 1148 (holding that *Bivens* did not apply to Fifth Amendment due-process claim because plaintiff had alternative means for relief against private entity's employees through 28 C.F.R. 542.10); *Schwarz v. Meinberg*, 761 Fed. App'x 732, 734–35 (9th Cir. 2019) (refusing to extend *Bivens* remedy to Fifth Amendment claim regarding  BOP's refusal to place the plaintiff in a camp or to Eighth Amendment unsanitary cell conditions claim because alternative remedies were available).

[42] *See Minneci*, 565 U.S. at 131.

[43] *See, e.g., Ziglar,* 137 S. Ct. at 1862–63 (refusing to extend *Bivens* to claim concerning conditions of confinement imposed on hundreds of prisoners where alternative remedies, including injunction actions, existed); *Schwarz v. Meinberg*, 761 Fed. App'x 732, 734–35 (9th Cir. 2019) (refusing to extend *Bivens* remedy to unsanitary cell conditions claim because alternative remedies were available); *see also Minneci*, 565 U.S. at 131 (holding that a *Bivens* claim may not be brought against employees working at a privately operated federal prison where the allegedly wrongful conduct is of a kind that typically falls within the scope of traditional state tort law).

like the BOP's remedial process under 28 CFR § 542.10,[44] injunction actions, and state-court tort actions, I dismiss their *Bivens* damages claims with prejudice.[45]

### 3. *Injunctive-relief claim for deliberate indifference to unsafe conditions*

Plaintiffs also seek injunctive relief, asking for the appointment of a liaison to have inmates and staff tested for COVID-19 and have inmates screened for transfer to home confinement, a halfway house, or pretrial release under the CARES Act.[46]   Injunctive relief may be available when a plaintiff states a colorable Eighth Amendment claim, invokes jurisdiction under 28 U.S.C. § 1331, and asks the court to exercise its traditional powers of equity in constitutional suits seeking injunctive relief against federal officers in their official capacity.[47] Liberally construed, the complaint satisfies these requirements.

While pretrial detainees are not protected by the Eighth Amendment's proscription against cruel and unusual punishment,[48] they are protected from cruel and unusual punishment by the Due Process Clause.[49]   The Supreme Court has long held that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."[50]   However, a pretrial detainee may be subjected to "restrictions and conditions . . . so long as those conditions

---

[44] *See* 28 CFR § 542.10 (2001) (explaining ARP as providing "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement").

[45] I would apply the same reasoning and reach the same conclusion even if I construed this claim as an equal-protection claim.

[46] ECF No. 1-1 at 9.

[47] *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally").

[48] *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Graham v. Connor*, 490 U.S. 3 86, 395 n.10 (1989).

[49] *United States v. Salerno*, 481 U.S. 739, 746–47 (1987).

[50] *Bell*, 441 U.S. at 536.

and restrictions do not amount to punishment, or otherwise violate the constitution."[51]  Because the Dillons allege an ongoing violation of their rights by federal officials and those contracted by federal officials, I construe their claims as ones arising under the Due Process Clause of the Fifth Amendment.

A pretrial detainee states a Fifth Amendment, conditions-of-confinement claim against an official if:  (1) the defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put the pretrial detainee at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the pretrial detainee's injuries.[52]  With respect to the third element, the defendant's conduct must be objectively unreasonable, which turns on the facts and circumstances of each particular case.[53]

While the Dillons do not allege that they have been infected with COVID-19, concern about the health of a person in custody is not limited to situations in which a prisoner already has been harmed.[54]  In the Eighth Amendment context, the Supreme Court has held that a prisoner who is not currently suffering from serious medical needs may state a claim by alleging facts

---

[51] *Id.* at 537–38.

[52] *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *see also Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

[53] *Id.*

[54] *See Helling v. McKinney*, 509 U.S. 25, 33–35 (1993) (recognizing that prison officials may be considered deliberately indifferent to the exposure of inmates to a serious, communicable disease even if the complaining inmate shows no current symptoms); s*ee also Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (recognizing that one does not have to await the consummation of threatened injury to obtain preventive relief for deliberate indifference to unsafe conditions).

sufficient to show that defendants are, with deliberate indifference, exposing him to conditions that pose an unreasonable risk of serious damage to his future health.[55]  Thus, courts assess whether officials made a deliberate decision regarding the plaintiff's conditions of confinement and whether the officials fail to take reasonable available measures to abate a substantial risk of serious harm even though reasonable officials in the circumstances would appreciate the high degree of risk involved.  If a court finds that a defendant is being deliberately indifferent to an ongoing significant risk of serious harm to future health, it may grant appropriate injunctive relief tailored to the violation.[56]

I find that the Dillons state a colorable Fifth Amendment, due-process claim for deliberate indifference to unsafe conditions.  Liberally construed, the complaint alleges facts that would be sufficient to show that plaintiffs are being exposed to a substantial risk of contracting the SARS-CoV-2, which is a serious infection.  The Dillons also allege that NSDC staff and officials are exposing them to this risk deliberately and not taking reasonable measures to abate that threat, even though a reasonable official would appreciate the high degree of risk involved.  This includes allegedly permitting the transfer to NSDC of inmates infected with COVID-19, not providing and requiring adequate masks for inmates and staff, not providing adequate sanitation supplies such as soap, not screening inmates to determine who is eligible for BOP transfer to home confinement or compassionate release, and not testing staff and inmates as a tool to prevent further spread of COVID-19.[57]

---

[55] *Helling*, 509 U.S. at 35.

[56] *Farmer*, 511 U.S. at 846.

[57] ECF No. 1-1 at 6–8.

13

As discussed above, plaintiffs are not eligible for transfer by the BOP from NSDC to home confinement or a halfway house.  And it is the courts, not the BOP, that determine whether a person will be released pending trial.[58]  So plaintiffs may not proceed on their claim seeking injunctive relief  to be screened for such transfers or release, and any such claim is dismissed with prejudice.  But plaintiffs may proceed on their claim seeking injunctive relief in the form of the appointment of a liaison to be assigned to immediately have all inmates and staff tested for COVID-19 as a tool to protect plaintiffs from contracting the COVID-19 virus.  Plaintiffs allege that defendant Brian Koehn is the Warden for NSDC, that defendant Michael Carvajal is the Director of the BOP, and that defendant Mr. Jefferson is in charge of NSDC.[59]  It therefore appears that plaintiffs are alleging that these people would be responsible for implementing any injunctive relief.  So, I will permit the injunction claims for Fifth Amendment due-process violations to proceed against these defendants based on alleged deliberate indifference to unsafe conditions.

**III.      Emergency motion for disposition due to the COVID-19 crisis**

The Dillons have also filed an emergency motion for disposition, seeking "immediate access to DOJ, BOP[,] and CDC standards of being screened per AG Barr and Director of BOP directive."[60]  They note that they are at heightened risk of contracting the virus due to the conditions of confinement at NSDC and have been denied a liaison to facilitate home confinement, a halfway house, or pretrial release under the CARES Act.[61]  Their motion does not

---

[58] 18 U.S.C. § 3142.

[59] ECF No. 1-1 at 2.

[60] ECF No. 1-3.

[61] *Id.*

14

request actual release and does not seek preliminary injunctive relief directed to changing the conditions of their confinement.

I construe their emergency motion as a motion for a preliminary injunction. Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."[62] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[63] Furthermore, under the PLRA, preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm the court finds requires preliminary relief," and must be "the least intrusive means necessary to correct that harm."[64] In addition, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself."[65]

As discussed above, the CARES Act provisions concerning earlier transfer to home confinement and the directives implementing those provisions of the CARES Act apply to people who have been convicted of crimes and sentenced, not to pretrial detainees. Although the

---

[62] *Winter v. Nat. Res. Defense Council*, 555 U.S. 7, 24 (2008).

[63] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

[64] 18 U.S.C. § 3626(a)(2).

[65] *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 635–36 (9th Cir. 2015); *Saddiq v. Ryan*, 703 Fed. App'x. 570, 571–72 (9th Cir. 2017) (holding that district court did not abuse its discretion by denying request for preliminary injunctive relief regarding alleged retaliation by defendants because the plaintiff did not establish a sufficient nexus between the claims raised in his motion for injunctive relief and the claims set forth in the underlying complaint itself).

15

Bureau of Prisons has limited authority to determine where a prisoner serves his sentence, it is the courts, not the Bureau of Prisons, that have the authority to decide whether a person who has been charged with a crime will be released pending trial.[66]  The Dillons may not seek pretrial release or screening for pretrial release by way of this civil action.  Because they have not shown any likelihood of success on their claims concerning their transfer to home confinement or a halfway house under the CARES Act and because prison officials do not have the authority to decide whether to release them pending trial, I deny the Dillons' request for an order requiring them to be screened under the directives issued by the Attorney General and the Director of the BOP.

**Conclusion**

IT IS THEREFORE ORDERED that the applications to proceed *in forma pauperis* from Melvin L. Dillon and Robert J. Dillon **[ECF Nos. 5, 6] are GRANTED**.[67]

- Plaintiffs need not pay an initial installment fee, prepay fees or costs, or provide security for fees or costs; but they are each still required to pay the full $350 filing fee under 28 U.S.C. § 1915.  This full filing fee will remain due and owing even if claims or this case are dismissed or otherwise unsuccessful.

- In order to ensure that plaintiffs pay the full filing fee, IT IS FURTHER ORDERED that Core Civic officials must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of Melvin L. Dillon, (#55495048) in the months that the account exceeds $10.00, until he has

---

[66] 18 U.S.C. § 3142.  If plaintiffs wish to seek pretrial release, they may not do so through a *Bivens* claim or through an injunction action and therefore may not do so in this action.  Such requests must be made in their criminal cases.

[67] This order granting in forma pauperis status does not extend to the issuance or service of subpoenas at government expense.

paid his full $350.00 filing fee for this action. Core Civic officials also must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of Robert J. Dillon (#55496048) in the months that the account exceeds $10.00, until he has paid his full $350.00 filing fee for this action. The Clerk of the Court is directed to SEND a copy of this order to the Finance Division of the Clerk's Office, and to the attention of the Chief of Inmate Services for Core Civic, 2190 East Mesquite Ave., Pahrump, NV 89060.

IT IS FURTHER ORDERED that:

- All claims against "Correction Corp of America, Core Civic (NSDC)" are DISMISSED with prejudice and without leave to amend.

- Claim 1 is DISMISSED with prejudice and without leave to amend.

- The *Bivens* claims in Claim 2 are DISMISSED with prejudice and without leave to amend.

- The injunction claim in Claim 2 for a Fifth Amendment due-process violation, seeking the appointment of a liaison to be assigned to immediately have all inmates and staff tested for COVID-19 as a tool to protect plaintiffs from contracting the COVID-19 virus, MAY PROCEED against defendants Brian Koehn, Michael Carvajal, and Mr. Jefferson based on alleged deliberate indifference to unsafe conditions. But the request for injunctive relief seeking BOP screening for transfer to home confinement, a halfway house, or pretrial release is DISMISSED with prejudice and without leave to amend.

- So, **to summarize:  this case proceeds only on the injunction claim in Claim 2 for a Fifth Amendment due-process violation against defendants Brian Koehn,**

17

**Michael Carvajal, and Mr. Jefferson based on alleged deliberate indifference to unsafe conditions, which seeks the appointment of a liaison to be assigned to immediately have all inmates and staff tested for COVID-19 as a tool to protect against the COVID-19 virus.**

IT IS FURTHER ORDERED that the Emergency Motion for Disposition Due to COVID-19 Crisis **[ECF No. 1-3] is DENIED.**

IT IS FURTHER ORDERED that the Clerk of the Court is directed to:

- **FILE** the complaint (ECF No. 1-1).

- **SEND** a copy of this order to <u>each</u> of the plaintiffs.

- **ISSUE SUMMONSES** for Defendants Brian Koehn, Michael Carvajal, and Mr. Jefferson **and deliver them** to the U.S. Marshal for service, along with sufficient copies of the complaint (ECF No. 1-1) and this order for service on those defendants.

- **SEND** to plaintiffs **three** USM-285 forms.  Plaintiffs will have **30 days after receiving those forms** to furnish to the U.S. Marshal the required USM-285 forms with relevant information about each defendant on each form.  Within 20 days after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, plaintiffs must file a notice with the Court identifying which defendants, if any, were served.  If plaintiffs wish to have service again attempted on an unserved defendant, they must file a motion with the Court identifying the unserved defendant and specifying a more detailed name and/or address for the defendant, or whether some other manner of service should be attempted.

IT IS FURTHER ORDERED that plaintiffs must serve upon defendants or, if an appearance has been entered by counsel, upon their attorneys, a copy of every pleading, motion or other document submitted for consideration by the Court.  If plaintiffs electronically file a document with the Court's electronic-filing system, no certificate of service is required.[68] However, if plaintiffs mail the document to the Court, they must include with the original document submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or their counsel.  If counsel has entered a notice of appearance, plaintiffs must direct service to the individual attorney named in the notice of appearance, at the physical or electronic address stated therein.  The Court may disregard any document received by a district judge or magistrate judge that has not been filed with the Clerk, and any document received by a district judge, magistrate judge, or the Clerk that fails to include a certificate showing proper service when required.

IT IS FURTHER ORDERED that, unless and until I decide to sever Melvin L. Dillon's claims from Robert J. Dillon's claims, **both plaintiffs must sign every document filed on their behalf.**

_____
U.S. District Judge Jennifer A. Dorsey
October 20, 2020

---

[68] Fed. R. Civ. P. 5(d)(1)(B); Nev. Loc. R. IC 4-1(b); Nev. Loc. R. 5-1.

19